UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                       )
SAVAGE ENTERTAINMENT, LLC,             )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )   C.A. No. 22-247 WES
                                       )
JAMAINE ORTIZ,                         )
                                       )
          Defendant.                   )
_____)

MEMORANDUM AND ORDER

WILLIAM E. SMITH, District Judge.

     Plaintiff Savage Entertainment, LLC ("Savage") sues Defendant
Jamaine Ortiz, a professional boxer, for breach of contract and
unjust enrichment. Compl., ECF No. 1-1. The Parties have filed
cross motions for summary judgment. See Def.'s Mot. Summ. J.
("Ortiz's Motion"), ECF No. 16; Pl.'s Mot. Summ. J. ("Savage's
Motion"), ECF No. 19. For the following reasons, the Court GRANTS
Ortiz's Motion and DENIES Savage's Motion.

     I.   BACKGROUND

     Plaintiff Savage is a limited liability company in
Providence, Rhode Island, which produces "all forms of
entertainment." Def.'s Statement Undisputed Facts Supp. Mot.
Summ. J. ("DSUF") ¶ 1, ECF No. 18 (quoting DXA to Engel Decl.,
R.I. Dep't of State, Business Services Division, 2022 Annual Report
for Savage (Feb. 10, 2022), ECF No. 18-1). Richard Shappy is

Savage's president and sole member.  Id. ¶ 2; Pl.'s Statement Undisputed Facts ("PSUF") ¶¶ 2-4, ECF No. 20.  Defendant Ortiz is a professional boxer.  PSUF ¶¶ 31-32; DSUF ¶ 4.

On or about April 13, 2016, when Ortiz was a 19-year-old amateur boxer, Savage and Ortiz entered into a Management Agreement ("Contract").  PSUF ¶¶ 1, 5; DSUF ¶ 5.  During the process of entering the Contract, Ortiz received advice from Frank Rohacik and his coach, Carlos Garcia.  PSUF ¶¶ 8-11.  Around the same time, Ortiz entered into a promotional agreement with Classic Entertainment & Sports, a promotional company owned by James Burchfield Sr.  DSUF ¶¶ 7, 9.  "Shappy and Burchfield Sr. were friends and business associates."  Id. ¶ 8.  Burchfield Sr. had, in fact, introduced Ortiz to Shappy.  Id. ¶ 6.  James Burchfield Jr., Burchfield Sr.'s son and an attorney, drafted both the Contract and the promotional agreement, though the Parties dispute whether Burchfield Jr. represented Savage.  Id. ¶¶ 10-13; see PSUF ¶¶ 27-29; Def.'s Statement Disputed Facts ("DSDF") ¶¶ 27-29, ECF No. 22.  Edward Imondi, an associate but not an employee of Shappy, facilitated the formation of the Contract, though the Parties dispute the capacity in which Imondi acted.  DSUF ¶¶ 13-15; see PSUF ¶¶ 23-26; DSDF ¶¶ 23-26.  Imondi, Shappy, and Burchfield Sr. discussed the terms of the Contract before drafting.  DSUF ¶ 15.

The Contract "granted to Savage the exclusive right to manage

Ortiz's professional career for a period of five years, ending on April 13, 2021." Id. ¶ 17.  In exchange for certain payments from Savage and Savage's "best efforts to secure remunerative boxing contests, exhibitions and commercial enterprises" for Ortiz, Ortiz would relinquish a percentage of the proceeds earned in such enterprises to Savage.  Id. ¶ 18 (quoting DXB to Ortiz Decl., Management Agreement (Apr. 13, 2016) at 2, ECF No. 18-2 ("Contract")).  The Contract "provided that the parties would obtain licenses and permits required by State laws."  Id. ¶ 19. Rhode Island law governed the Contract.  Id. ¶ 23.

The Contract contained a provision extending the expiration date by three years should Ortiz challenge for or win a certain "World Title" ("Extension Provision").  Contract ¶ 13(b).  On February 23, 2019, Ortiz won a World Boxing Council ("WBC") youth championship ("WBC Youth Title"), though the Parties dispute whether this should be considered a "World Title" that would extend the Contract's expiration date from April 13, 2021, to April 13, 2024.   See PSUF ¶¶ 33, 37-39; DSDF ¶¶ 33, 37-39; Compl. ¶¶ 12-14; Answer ¶¶ 12-14, ECF No. 7.

Shappy was licensed as an athletics manager in Rhode Island in 2017 but "was not licensed as a boxing manager in Rhode Island at the time the [Contract] was executed . . . , or at any point in 2016 or 2018 through the present."  DSUF ¶¶ 29-30.  Shappy did not

3

submit a copy of the Contract to the Rhode Island Division of Gaming and Athletics with his license application in 2017 or otherwise. Id. ¶ 31.

On May 17, 2022, Savage filed its Complaint against Ortiz in state court. See Compl. Ortiz thereafter removed the case to this Court. Notice of Removal, ECF No. 1. In the Complaint, Savage alleges Ortiz violated the Contract by participating in a boxing match on May 21, 2022, without Savage's knowledge or approval and under the direction of a different manager. Compl. ¶¶ 16-20. Savage alleges Ortiz's actions amount to breach of contract and unjust enrichment and seeks declaratory and injunctive relief in addition to damages. Id. ¶¶ 27, 29, 33-34, 35-42.

II.  LEGAL STANDARD

"Summary judgment is proper when the pleadings, discovery, and affidavits, show that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Grossman v. Martin, 566 F. Supp. 3d 136, 142 (D.R.I. 2021) (quoting Fed. R. Civ. P. 56). When reviewing cross-motions for summary judgment, the Court "consider[s] each motion separately, drawing all inferences in favor of each non-moving party in turn." AJC Int'l, Inc. v. Triple-S Propiedad, 790 F.3d 1, 3 (1st Cir. 2015) (quoting D & H Therapy Assocs., LLC v. Bos.

Mut. Life Ins. Co., 640 F.3d 27, 34 (1st Cir. 2011)).  The Court

must decide "whether either of the parties deserves judgment as a

matter of law on facts that are not disputed."  Dahua Tech. USA

Inc. v. Feng Zhang, 988 F.3d 531, 539 (1st Cir. 2021) (internal

quotation marks omitted) (quoting Fidelity Co-op. Bank v. Nova

Cas. Co., 726 F.3d 31, 36 (1st Cir. 2013)).

   III. DISCUSSION

    Ortiz seeks summary judgment on three grounds.  First, he

claims the Contract is "null and void because Savage failed to

comply with Rhode Island law and regulations governing the

licensing of boxing managers."  Def.'s Mot. 1, ECF No. 16.  Second,

he posits the Contract expired on April 13, 2021, so "Savage would

not be entitled to any percentage of any purses Ortiz earned after

that date."   Id. at 14.   Third, he argues Savage's unjust

enrichment claim fails because "Ortiz did not inequitably retain

any benefit he received from Savage," and a finding of unjust

enrichment "would undermine Rhode Island public policy."[1]  Id. at

14-15.

---

    [1] Additionally, Ortiz raises an issue regarding Savage's
failure to timely respond to a request for admissions.  Def.'s
Mot. Summ. J. 16, ECF No. 16.  That issue is now moot.  See Text
Order (Oct. 16, 2023) (granting Savage leave to respond to the
request for admissions).

Savage's summary judgment argument centers on the expiration of the Contract. Specifically, Savage argues the Extension Provision was triggered when Ortiz won the WBC Youth Title on February 23, 2019, such that the Contract expires on April 13, 2024, entitling Savage to the allotted percentage of Ortiz's purses won after April 13, 2021. Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem.") 2, 15-16, ECF No. 19.

A. Contract Legality and Validity

Ortiz posits the Contract is unenforceable under Rhode Island law because Shappy (1) failed to obtain a manager license upon formation of the Contract, (2) failed to maintain a license throughout the Contract's duration, and (3) failed to submit a copy of the Contract to the Rhode Island Division of Gaming and Athletics. Def.'s Mot. 1-2. Ortiz states that Rhode Island law "prohibits any person from acting as a manager of a boxer unless licensed as such by the Division of Gaming and Athletics." Id. at 7 (citing R.I. Gen. Laws § 41-5-7). Ortiz acknowledges that Rhode Island case law does not address whether a violation of the licensing requirement voids a boxing management agreement, so he looks to examples in California and New York, which indicate that failure to license voids an agreement. See id. at 9-11.

Savage counters that Rhode Island law only concerns "managers acting as such 'at a boxing or sparring match or exhibition,'"

6

which is "not what [Savage] was contracted to do."  Pl.'s Resp.
Def.'s Mot. Summ. J. ("Pl.'s Opp'n") 1, ECF No. 23; see R.I. Gen.
Laws § 41-5-7.  Savage further contends that Rhode Island law,
modeled off federal law, "does not explicitly concern itself with
the formation or form of boxer-manager contracts," but rather
focuses on promoter-boxer contracts, "the independence of boxing
officials and entities surrounding matches," "the physical safety
of boxers," "the integrity of boxing events," and the "protection
of state revenues."  Pl.'s Opp'n 5-6.  Thus, Savage argues, Ortiz's
reliance on California and New York case law is inapposite because
the law in those jurisdictions specifically addresses boxer-
manager relationship issues, whereas Rhode Island law does not.
Id. at 2, 5-6, 8-10, 12.  Savage also argues that Rhode Island
public policy does not support voiding the Contract because Ortiz
"received substantial benefit" from the Contract and Savage "acted
in good faith throughout the term of the Contract."  Id. at 3, 11;
see id. at 12-15 (collecting cases in which courts declined to
void a contract under the doctrine of illegality for public policy
reasons).

Ortiz replies that, first, "Savage cannot manufacture a
genuine dispute by selectively claiming that Shappy was not acting
as a 'manager' only on the specific occasions during the term of
the [Contract] on which Ortiz was actively competing in a boxing

match."  Def.'s Reply Supp. Mot. Summ. J. ("Def.'s Reply") 2, ECF
No. 26 (footnote omitted).  Additionally, Ortiz claims that "Savage
misrepresents the public policy underlying the Rhode Island
statutory and regulatory scheme governing boxing" because the
legislative history of the federal Professional Boxing Safety Act,
incorporated by reference in Rhode Island's regulations, shows an
intent to protect boxers from exploitative business practices.
Id. at 3-5.  To counter Savage's claim that public policy
discourages nullification, Ortiz highlights evidence that "bear[s]
the hallmarks of . . . corruption and conflicts of interest" on
Savage's part – i.e., the connections between Shappy and Burfield
Sr. and Burfield Jr.'s drafting of the Contract and the promotional
agreement.  Id. at 5-6.  Broadly, Ortiz argues that enforcement of
the Contract despite Shappy's conceded failure to license "would
effectively nullify Rhode Island's licensing requirement."  Id. at
1 (footnote omitted).

The Rhode Island statute reads, in relevant part: "No person
shall act, except at a purely amateur match or exhibition, directly
or indirectly, as . . . manager . . . at a boxing or sparring match
or exhibition unless licensed by the division of gaming and
athletics licensing."  R.I. Gen. Laws § 41-5-7(a).  Under the Rhode
Island regulations, a "manager" is "a person who receives
compensation for service as an agent or representative of a boxer."

230 R.I. Code R. § 30-30-1.4.  Managers must apply for licenses "on forms designated by the Division" and "submit a copy of their contractual arrangement."  Id. § 30-30-1.5(C).

The Rhode Island regulations incorporate by reference the federal Professional Boxing Safety Act, as amended by the Muhammad Ali Boxing Reform Act, 15 U.S.C. § 6301, et seq. (the "Federal Act").  See 230 R.I. Code R. § 30-30-1.3(A).  The Federal Act serves "to improve and expand the system of safety precautions that protects the welfare of professional boxers" and "to assist State boxing commissions to provide proper oversight for the professional boxing industry in the United States."  15 U.S.C. § 6302.  As Ortiz highlights, the legislative history of the Federal Act reflects an intent to, inter alia, "protect professional boxers from unfair business practices of managers and promoters."  Def.'s Reply 3 (quoting H.R. Rep. 106-449(I), at 11 (1999)).

Based on the language of the Rhode Island statute and regulations and the legislative history of the Federal Act, the Court agrees with Ortiz that the Rhode Island legislature intended to protect boxers from exploitation by managers.  The state agency's oversight through licensing promotes that goal.  The Court sees no reason why, as Savage suggests, the Rhode Island legislature would intend to waive the licensing requirement for a person who sits with the audience during a match, rather than in

the boxer's corner, but otherwise acts as the boxer's manager and where no other person could be considered the manager. Accordingly, based on the undisputed facts, the Court finds that Savage violated Rhode Island law when its sole officer and member, Shappy, failed to obtain or maintain a license while serving as Ortiz's manager and failed to provide the agency with a copy of the Contract.

Next, the Court finds Savage's failure to comply with Rhode Island's licensing law nullifies the Contract. Under Rhode Island law, "[c]ontracts entered into in contravention to a state statute . . . are illegal, and no contract rights are created thereby." Power v. City of Providence, 582 A.2d 895, 900 (R.I. 1990) (citing Birkett v. Chatterton, 13 R.I. 299, 302 (1881)); see also Patel v. Patel, 252 A.3d 1221, 1234 (R.I. 2021) ("Courts will not enforce contracts which are tainted with illegality." (quoting G.W. McNear, Inc. v. Am. & British Mfg. Co., 107 A. 242, 248 (R.I. 1919))). Further, "a contract or agreement against public policy is illegal and void." City of Warwick v. Boeng Corp., 472 A.2d 1214, 1218 (R.I. 1984); see id. ("[A] contract or agreement is generally against public policy if it is injurious to the interests of the public, interferes with the public welfare or safety, is unconscionable, or tends to injustice or oppression.").

The California and New York case law provided by Ortiz illustrates why nullification in the situation of an illegal boxer-manager contract is appropriate to protect boxers from exploitation.  See Def.'s Mot. 9-11.  For example, the court in Halpern v. Greene voided an illegal boxer-manager contract, holding that the New York boxing law "parallels the federal legislation" and was enacted "for the purpose of uprooting entrenched repeated occurrences of disreputable, coercive and abusive business practices in the boxing industry."  899 N.Y.S.2d 59 (Table), 2009 WL 2972386, at *3 (N.Y. Sup. Ct. Sept. 15, 2009). And the court in Castillo v. Barrera found it appropriate to consider such a contract void "to safeguard boxers against the temptation to mortgage their futures."  53 Cal. Rptr. 3d 494, 503 (Cal. Ct. App. 2007) (quoting Foreman v. George Foreman Assocs., Ltd., 517 F.2d 354, 357 (9th Cir. 1975)).

Savage's attempts to distinguish the Rhode Island scheme from the California and New York analogues fail because, as noted above, the fundamental purpose of the Rhode Island statute and regulations is to protect boxers from exploitation, like California's and New York's.  Savage's argument that nullification would violate public policy stems from its unjust enrichment claim.  See Pl.'s Opp'n 12-13, 16.  But "Rhode Island law makes clear that a party to an illegal contract cannot avoid the illegality simply by seeking

11

relief in equity."  Hasbro, Inc. v. Mikohn Gaming Corp., 491 F. Supp. 2d 256, 264 n.12 (D.R.I. 2007); see also Patel, 252 A.3d at 1234 n.17 (noting the Rhode Island Supreme Court's "long history of refusing to 'aid either party'" to an illegal contract (quoting Sullivan v. Hergan, 17 R.I. 109, 110, 20 A. 232, 233 (1890))).

Accordingly, Ortiz is entitled to summary judgment on both of Savage's claims - breach of contract and unjust enrichment - because the contract is void for illegality.  The Court need not reach the merits of Savage's Motion because it is now moot, for it only concerns the expiration date of the Contract.

IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Ortiz's Motion for Summary Judgment, ECF No. 16, and DENIES Savage's Motion for Summary Judgment, ECF No. 19.  With no remaining claims, judgment will be entered accordingly.[2]


IT IS SO ORDERED.

_WESmith_
_____

William E. Smith
District Judge
Date: November 30, 2023

---

[2] To the extent Savage intended to bring its requests for declaratory and injunctive relief as independent claims, Compl. ¶¶ 21-34, ECF No. 1-1, such are remedies, not causes of action, under both federal and Rhode Island law.  Buck v. Am. Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007); Doe v. Brown Univ., 166 F. Supp. 3d 177, 197 (D.R.I. 2016); Long v. Dell, Inc., 93 A.3d 988, 1004 (R.I. 2014).